**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FAITH VANDEMARK, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**WALMART INC.**<br><br>**Defendant.** | **Case No.:** 1:26-cv-1865 (MAD/DJS)<br><br>**CLASS & COLLECTIVE ACTION** |

Plaintiff, Faith Vandemark, individually and on behalf of all others similarly situated, upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover unpaid wages and other damages for Plaintiff and her similarly situated co-workers – Spark delivery drivers employed by Walmart, but classified as independent contractors by Walmart, (hereinafter "Drivers") who work or have worked for Walmart, Inc. ("Walmart" or "Defendant") in New York.

2. Walmart is one of the largest retail, grocery, and delivery companies in the United States. Headquartered in Bentonville, Arkansas, Walmart operates in the State of New York, employing thousands of Drivers.

3. Drivers work for Walmart via delivery orders assigned through a smartphone application controlled solely by Walmart called Spark.

4. Walmart's Spark program is one of the largest "last-mile merchandise delivery services" in the United States. It has employed 1 million drivers nationally, and conducted over 355 million deliveries. *See* **Exhibit A,** Spark FTC Complaint, ¶ 42.

5. Walmart controls whether an applicant may become a Driver after requiring identity information, a background check, a qualifying vehicle, a driver's license, auto insurance, a compatible smartphone, and acceptance of non-negotiable platform terms.

6. Walmart provides the retail items, groceries, and other goods to be delivered by Drivers.

7. These items are almost always goods that have moved in interstate commerce. *See* **Exhibit B**, List of Interstate Commerce Items Deliverable by Walmart.[1]

8. Walmart controls all aspects of delivery orders fulfilled by Drivers, including the store location, shopping list, pickup time, number of stops, and delivery windows. Drivers have no input as to the price Walmart's customers pay for using this delivery service.

9. Walmart calculates base pay through its own calculations, and controls what information is displayed to Drivers before they select an order. Hence, Drivers are unable to set their own prices for the services they perform for Walmart.

10. Walmart further requires proof of delivery, monitors driver locations, and mandates specific delivery locations.

11. Walmart solely retains the power to suspend or deactivate Drivers, and maintains specific service-level, routing, substitution, communication, return, and customer-contact requirements.

12. Walmart directly receives customer payments and tips, determines all compensation paid to Drivers, and controls access to all Drivers' pay records.

13. Drivers cannot negotiate the delivery fee or tip allocation, substitute for another individual, or advertise for a delivery business independent of Walmart to Spark customers.

---

[1] This list is non-exhaustive and is meant for illustrative purposes.

14. Driver work is not collateral to Walmart's business of selling retail goods, but is instead the core of the entire business of delivering goods to customers.

15. Walmart customers cannot request a specific Driver to perform their delivery when ordering on Spark.

16. If a Driver is unable to make a delivery after accepting a job, Walmart finds the replacement Driver, instead of the replacement being assigned by the driver.

17. Walmart processes customer complaints and refunds for incorrect, missing, or damaged items for deliveries performed by Drivers.

18. Walmart does not record and/or compensate Drivers for all the time they spend performing work for Spark, including, but not limited to, time traveling to assigned stores after accepting offers, waiting at stores for orders to be released, shopping and substituting items, loading, delivering, completing mandatory app procedures, communicating with Spark support and customers, and returning undeliverable items.

19. Due to Walmart's lack of proper timekeeping and compensation policies, Drivers were often paid nothing, or mere cents per hour.

20. Moreover, Drivers do not receive overtime pay for hours worked over 40 in each workweek.

21. Walmart passed the burden of costs associated with deliveries onto Drivers, including, but not limited to, fuel costs, toll payments, parking payments, ticket payments, vehicle maintenance, and vehicle insurance.

22. The costs imposed by Walmart on Drivers were necessary for the performance of Walmart's delivery business.

23. The costs imposed by Walmart on Drivers cut into their hourly rate, further reducing them below the minimum wage.

24. The costs imposed by Walmart on Drivers who worked over forty hours per week cut into their owed overtime premium pay, further reducing them below time and a half their regular rate/minimum wage payments they were owed.

25. Walmart knowingly promised Drivers tip amounts that did not reflect the amount of money that Drivers would receive.

26. In this regard, Walmart would: (1) display combined pre-tips on batched orders and then remove tipped orders without timely updating the offer or telling the Drivers; (2) present pre-tips that Walmart did not collect; (3) split tips when customer orders were split among Drivers without accurately disclosing the split; and (4) fail to pay promised incentives and base pay. *See* **Exhibit A,** ¶ 52-73, 78-107.

27. Walmart is fully aware that they promise tips that they do not deliver in order to incentivize Drivers to take on deliveries, for example internal audits run by Walmart have shown that on average, Walmart promised at on average $1.5 million per month in tips they did not deliver on. *See* **Exhibit A,** ¶ 74.

28. Walmart's approach to this is to attempt to cover it up to protect their business. *See* **Exhibit A** ¶ 73 ("[A] Walmart employee proposed that Walmart notify Drivers when Tip Failures occurred: 'I believe, it is the Driver's right, to be notified'…But the Spark team rejected the idea, expressing concern th**at Drivers would quit Spark if they knew** that Walmart did not substantiate the pre-tips it advertised in its Offers: 'I don't think we need to show them failure. It's going to start a landslide'") (emphasis added).

29. In fact, Walmart would just pass the blame over to their customers, displaying an image to Drivers that their tip was adjusted by the customer after delivery. *See* **Exhibit A**, Image 5.

30. Furthermore, Walmart would often retain tips meant for Drivers. *See* **Exhibit A, ¶** 65,102-107.

31. Walmart's own internal reviews have shown that in a single one week period Walmart has retained up to $199,000.00 of customer tips. *See* **Exhibit A** ¶ 105.

32. Accordingly, Walmart has sufficient notice that they are misappropriating Drivers' tips, and are knowingly continuing to steal from Drivers.

33. Walmart deducts the costs necessary for Drivers to work for Walmart from Drivers' compensation.

34. In this regard, Drivers are forced to pay for their gasoline, parking fees, tolls, insurance, and maintenance for their vehicles in order to work for Walmart.

35. Defendant failed to provide Drivers with an accurate statement of wages pursuant to NYLL § 195(3).

36. Plaintiff could not rely on paystubs to ensure that Defendant paid her the correct rate for the hours she worked, because Defendant does not provide any.

37. Moreover, Defendant fraudulently informed Drivers that withheld payments and tips were due to customer actions, and not due to the Defendant's conversion of these funds.

38. Accordingly, Defendant did not provide Plaintiff with accurate wage statements as they did not provide **any** hours worked, the correct amount of owed minimum wages, agreed upon wages, overtime, and tips owed to Plaintiff. In this regard, the failure to provide Plaintiff with wage statements violated NYLL § 195(3).

39. Due to Defendant's failure to provide accurate wage statements, Plaintiff and similarly situated Drivers were misinformed about the correct wages they were entitled to receive, hours they worked, and tips they were owed.

40. Defendant's failure to provide wage statements allowed Defendant to continue their unlawful wage and hour scheme without Plaintiff's or similarly situated Drivers' awareness that they were being underpaid and misclassified. Accordingly, Plaintiff and similarly situated Drivers in New York are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

41. Upon information and belief, Defendant similarly failed to provide Plaintiff and all other similarly situated Drivers with any time of hire notices pursuant to NYLL § 195(1).

42. Drivers could not rely on their wage notices to ensure them of their status as employees and their entitlement to minimum wages and overtime.

43. New York's legislature enacted NYLL § 195(1) to prevent this exact scenario.

44. Due to Defendant's failure to provide Plaintiff and Drivers with notices reflecting their hours and rates of pay, Plaintiff and Drivers were misinformed about the correct wages they were supposed to earn and status as employees and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

45. Defendant's failure to provide any wage notices allowed Defendant to continue their unlawful wage and hour scheme without Plaintiff's and Drivers' awareness that they were being underpaid, it is obvious that Defendant could not on one hand provide Drivers with a notice informing them they were employees who were owed minimum wage and overtime, and on the

other inform them they were classifying them as independent contractors and avoid paying owed wages.

46. Walmart does not provide Drivers with **any** protected paid sick time, despite the requirements of NYLL § 196-B.

47. Walmart is, or should be, aware that Drivers are in fact employees under New York Law.

48. In *Matter of Vega*, the New York Court of Appeals found Postmates delivery drivers to be employees under practically the same employment circumstances as Drivers employed by Spark. *See Matter of Vega*, 35 N.Y.3d 131, 137 (2020).

49. To support their massive multi-billion-dollar operation, Walmart employs a verifiable army of attorneys specifically assigned to ensure compliance with federal and state labor laws.

50. Accordingly, the notion that Walmart is not fully aware that Drivers would be considered employees in New York is nothing less than preposterous.

51. In fact, Walmart is more than aware that Walmart regularly steals tips from Drivers or promises them payment they cannot deliver. This is blatantly illegal.

52. Walmart is aware that their scheme on promising payments/ tips but not delivering them carries legal risk. *See* **Exhibit A,** Image 4, ¶ 82, 97, 106.

53. Walmart consciously acts to cover up their unlawful wage scheme to prevent Drivers from learning why they are not getting paid their promised tips and offers to discourage them from quitting or starting a landslide of litigation. *See* **Exhibit A** ¶ 73.

54. Walmart nonetheless conducts its Spark business while brazenly violating federal and state labor laws.

55. Drivers' delivery of retail and grocery goods to customers forms the last leg of a chain of interstate commerce. *See* **Exhibit B**.

56. Walmart operates Spark solely to deliver these items, they do not "come to rest" prior to Drivers' delivery of these items.

57. Plaintiff brings this action on behalf of herself and all other similarly situated Drivers who elect to opt-in to this action pursuant to the "FLSA," and specifically, the collective action provision of 29 U.S.C. § 216(b).

58. Plaintiff also brings this action on her behalf and on behalf of all other similarly situated Drivers in New York State pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL").

## THE PARTIES

### Plaintiff

#### Faith Vandemark

59. Faith Vandemark ("Vandemark") is an adult individual who is a citizen of the state of New York.

60. Vandemark was employed by Defendant as a Driver in New York from approximately August 2023 to August 2024.

61. Vandemark is a covered employee within the meaning of the FLSA and the NYLL.

62. A written consent form for Vandemark is being filed with this Complaint.

### Defendant

#### Walmart Inc.

63. Walmart is a foreign for-profit limited liability corporation organization organized and existing under the laws of Delaware.

64. Walmart's principal corporate headquarters is 1 Customer Drive, Bentonville, Arkansas 72716.

65. Walmart is a covered employer within the meaning of the FLSA and NYLL and at all times relevant, it employed Plaintiff and similarly situated employees.

66. At all times relevant, Walmart has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

67. Walmart applies the same employment policies, practices, and procedures to all Drivers in its operation, including policies, practices, and procedures with respect to the payment of wages.

68. Upon information and belief, at all relevant times Walmart has had an annual gross volume of sales in excess of $500,000.00.

69. At all times relevant, Walmart has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

70. In this regard, employees for Walmart regularly handled goods in interstate commerce, including, but not limited to, the items listed in **Exhibit B**.

**JURISDICTION AND VENUE**

71. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

72. This Court also has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one Plaintiff is a citizen of a state different from that of Defendant.

73. There are over 100 members in the proposed class.

74. Defendant is subject to personal jurisdiction in New York.

75. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

**COLLECTIVE ACTION ALLEGATIONS**

76. Plaintiff brings the First, Second, and Third Causes of Action, FLSA claims, on behalf of:

> All current and former individuals who worked as Spark Delivery Drivers for Walmart in New York between September 30, 2023 and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

77. Defendant is liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and the FLSA Collective with minimum wages, premium overtime compensation, and misappropriating tips.

78. Consistent with Defendant's policies, patterns, or practices, Plaintiff and the FLSA Collective were not paid proper minimum wages for all hours worked, nor premium overtime compensation for all hours worked beyond 40 per workweek.

79. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and the FLSA Collective have performed.

80. As part of their regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited

to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, minimum wages and premium overtime wages for all hours worked in excess of 40 hours per workweek.

81. Defendant is aware or should have been aware that federal law requires them to pay Plaintiff and the FLSA Collective minimum wages and overtime for all hours worked. In fact, Defendant has previously been sued for similar misclassification matters with Spark Drivers and has not changed their policies. *See Walz v. Walmart Inc.,* No. 23 Civ. 06083 (BHS), 2024 WL 2864230 (W.D. Wash. June 6, 2024); *Shugars v. Walmart Inc.,* No. 24 Civ. 02765 (EKL), 2025 WL 786348 (N.D. Cal. Mar. 12, 2025).

82. Furthermore, Walmart is aware that they misappropriate tips from the FLSA Collective, and that this was illegal. *See* **Exhibit A,** Image 4, ¶74, 76, 82, 97, 103, 106.

83. Furthermore, Defendant employs a large legal team with the purpose of compliance with the FLSA.

84. Defendant employs a strategy of purposely violating the FLSA.

85. Accordingly, Defendant's violation of the FLSA is willful.

86. There are many similarly situated current and former Drivers who have been denied minimum wages and overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## NEW YORK CLASS ALLEGATIONS

87. Plaintiff brings the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and the following class:

> All current and former individuals who worked as Spark Delivery Drivers for Walmart in New York

> between October 1, 2020 and the date of final judgment in this matter (the "New York Class").

88. The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

89. There are more than 100 members of the New York Class.

90. Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

91. Plaintiff and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

92. Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.

93. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

94. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

95. Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

a. Whether Defendant misclassified Plaintiff and the New York Class as independent contractors exempt from the minimum wage protections of the NYLL;

b. Whether Defendant misclassified Plaintiff and the New York Class as independent contractors exempt from the overtime protections of the NYLL;

c. Whether Defendant misappropriated tips owed to Plaintiff and the New York Class;

d. Whether Defendant unlawfully deducted costs from Plaintiff's and the New York Class's wages;

e. Whether Defendant misclassified Plaintiff and the New York Class as independent contractors exempt from the sick pay requirements of the NYLL;

f. Whether Defendant kept accurate time records of all work performed by Plaintiff and the New York Class;

g. Whether Defendant provided proper time of hire wage forms and what harm these forms caused Plaintiff and the New York Class;

h. Whether Defendant provided accurate wage statements and what harm these forms caused Plaintiff and the New York Class.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

96. Consistent with their policies and patterns or practices as described herein, Defendant harmed Plaintiff, individually, as follows:

**Faith Vandemark**

97. Vandemark worked for Defendant from approximately August 2023 to approximately August 2024.

98. Vandemark did not maintain her own independently established delivery business outside of working for Walmart.

99. Vandemark did not advertise independent delivery services or cultivate customers to make deliveries outside of working for Walmart.

100. Vandemark did not employ any individuals to help her complete deliveries for Walmart.

101. Vandemark did not negotiate delivery fees with Walmart or customers directly while working for Walmart.

102. In order for Walmart to employ Vandemark, she had to submit to a background check, and provide proof of a qualifying vehicle, driver's license, auto insurance, and a compatible smartphone.

103. When tasked with a delivery, Walmart would assign Vandemark the store location, shopping list, pickup time, necessary stop locations, and delivery time windows.

104. Vandemark was not paid an hourly wage, but instead was compensated through a per delivery piece rate determined solely by Walmart, and customer tips.

105. Due to Walmart's piece rate policy, which failed to account for time spent on cancelled orders, time spent traveling, and time spent shopping, Vandemark's effective hourly rate would at times fall below the applicable minimum wage.

106. For example, from the workweek May 6, 2024 to May 12, 2024, Vandemark worked at least six hours, and was only paid $73.30 by Walmart. *See* **Exhibit C**, Vandemark Delivery Records.

107. For the workweek May 6, 2024 to May 12, 2024, Vandemark's hourly rate was at most $12.22 per hour, below the applicable $15.00 per hour.

108. Moreover, for the workweek April 29, 2024 to May 5, 2024 Vandemark worked at least 11.5 hours for Walmart and was paid $162.41 by Walmart. *See* **Exhibit C**, Vandemark Delivery Records.

109. For the workweek of April 29, 2024 to May 5, 2024 Vandemark's hourly rate was at most $14.12 per hour, below the applicable $15.00 per hour.

110. Moreover, Vandemark would frequently perform work for Walmart and end up receiving no compensation at all.

111. In this regard, when a customer canceled an order while Vandemark was in the middle of a pickup, she would receive no compensation whatsoever.

112. Customers cancelling orders was a frequent occurrence, generally happening 2 to 3 times per month Vandemark worked.

113. Accordingly, this meant Vandemark worked additional unpaid hours each month traveling to Walmart locations, picking up items, and then returning them.

114. This further reduced Vandemark's hourly rate below the applicable minimum wage.

115. Vandemark did not receive overtime pay for hours worked over 40 in a workweek.

116. For example, for the workweek of August 5, 2024 to August 11, 2024, Vandemark worked over 40 hours for Walmart and received no overtime pay.

117. Vandemark was regularly promised tips that Walmart did not deliver to her.

118. At times, Vandemark would be informed by Walmart that a tip for a delivery would be higher than the tip she received.

119. Vandemark was informed that this occurred due to customer "tip-baiting."

120. However, Walmart would simply retain or fail to pay the majority of these tips and not disburse them to Vandemark.

121. During her entire employment, Vandemark had to pay for her own gasoline, parking fees, tolls, insurance, and maintenance for her vehicle in order to work for Walmart as a Driver.

122. Vandemark did not receive paid sick time off from Walmart to use for her own or her family members' illnesses.

123. Vandemark did not receive a wage notice from Walmart at her time of hire.

124. The lack of a time of hire wage notice misinformed Vandemark about her entitlement to minimum wages and overtime compensation.

125. Defendant concealed their unlawful wage scheme by denying Vandemark the time of hire notice she was lawfully entitled to and instead informing her she was an independent contractor.

126. Vandemark did not receive an accurate statement of wages when she was paid.

127. In this regard, Vandemark did not receive a "paystub" or any documentation detailing the hours she worked, her entitlement to minimum wages, overtime wages, tip compensation or sick pay.

128. Defendant concealed their unlawful wage scheme by denying Vandemark the accurate wage statements she was entitled to.

129. Due to Defendant's failure to provide accurate wage statements, Vandemark was misinformed about the correct number of hours she worked, and was thus deprived of the

information necessary to review her wages and hours worked, which was a direct cause for her economic injury, and in fact, resulted in her wages being underpaid.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

130. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

131. At all times relevant, Plaintiff and the FLSA Collective were or have been employees, and Defendant was or has been an employer of Plaintiff and the FLSA Collective, within the meaning of 29 U.S.C. §§ 201 *et seq.*

132. At all times relevant, Defendant has been an employer of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

133. Defendant failed to pay Plaintiff and the FLSA Collective for all hours worked at no less than the applicable minimum wage.

134. As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

135. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

136. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendant and protect Plaintiff and the members of the FLSA Collective.

137. Defendant failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

138. As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## **THIRD CAUSE OF ACTION**
**Fair Labor Standards Act - Misappropriated Tips**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

139. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

140. The provisions regarding misappropriation of gratuities set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendant and protect Plaintiff and the FLSA Collective.

141. Defendant unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the FLSA Collective in violation of § 203(m) of the FLSA and the supporting United States Department of Labor Regulations.

142. Defendant unlawfully retained gratuities intended for Plaintiff and the FLSA Collective in violation of § 203(m) of the FLSA and the supporting United States Department of Labor Regulations.

143. As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by having their gratuities misappropriated in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

144. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

145. At all times relevant, Plaintiff and the New York Class have been employees of Defendant, and Defendant has been the employer of Plaintiff and the New York Class within the meaning of the NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

146. Defendant has failed to pay Plaintiff and the New York Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

147. Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendant has been required to pay Plaintiff and the members of the New York Class the full minimum wage at a rate of at least $11.80 per hour on and after December 31, 2019; $12.50 per hour on and after December 31, 2020; $13.20 per hour on and after December 31, 2021; $14.20 per hour on and after December 31, 2022; $15.00 per hour on and after January 1, 2024; $15.50 per hour on and after January 1, 2025; and $16 per hour on and after January 1, 2026.

148. Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**<u>FIFTH CAUSE OF ACTION</u>**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

149. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

150. At all times relevant, Plaintiff and the New York Class have been employees of Defendant, and Defendant has been an employer of Plaintiff and the New York Class within the meaning of the NYLL §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

151. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant and protect Plaintiff and the New York Class.

152. Defendant failed to pay Plaintiff and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate – for all hours worked beyond 40 per workweek.

153. Thus, Defendant violated the overtime requirements of the NYLL.

154. Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Agreed Upon Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

155. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

156. The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendant, and protect Plaintiff and the New York Class.

157. Pursuant to NYLL, Article 6 § 191(1)(d), Defendant is required to pay Plaintiff and the New York Class the wages they have earned in accordance with the agreed terms of their employment.

158. Defendant failed to pay Plaintiff and the New York Class the earned wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations, pursuant to the agreed-upon terms of Plaintiff's employment.

159. Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their agreed-upon earned wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Tip Misappropriation**
**(Brought on behalf of Plaintiff and the New York Class)**

160. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

161. Defendant unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the New York Class in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

162. Defendant unlawfully retained part of the gratuities earned by Plaintiff and the New York Class in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

163. By Defendant's knowing or intentional demand for, acceptance of, and/or retention of a portion of the gratuities and/or service charges received by Plaintiff and the New York Class, Defendant willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

164. Due to Defendant's willful violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their unpaid gratuities and/or service charges, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION
**New York Labor Law – Unlawful Deductions**
**(Brought on behalf of Plaintiff and the New York Class)**

165. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

166. Defendant made unlawful deductions from the wages of Plaintiff and the New York Class. These deductions included, but were not limited to, costs for fuel, parking, tolls, vehicle insurance, and maintenance.

167. The deductions made from the wages of Plaintiff and the New York Class were not authorized or required by law.

168. The deductions made from the wages of Plaintiff and the Class were not expressly authorized in writing by Plaintiff and the New York Class, and were not for the benefit of Plaintiff and the New York Class.

169. Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant the amounts of any unlawful deductions, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**NINTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Sick Time Pay**
**(Brought on behalf of Plaintiff and the New York Class)**

170. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

171. Defendant failed to provide Plaintiff and the New York Class with protected sick time pay to be used for their or their family members' mental or physical illnesses, injury, or health condition, regardless of whether it has been diagnosed or requires medical care at the time of the request for leave; or for the diagnosis, care, or treatment of a mental or physical illness, injury or health condition; or need for medical diagnosis or preventive care.

172. Defendant further failed to provide Plaintiff with protected paid time off for an absence from work when the employee or employee's family member has been the victim of domestic violence, a family offense, sexual offense, stalking, or human trafficking due to any of the following as it relates to the domestic violence, family offense, sexual offense, stalking, or human trafficking, to obtain services from a domestic violence shelter, rape crisis center, or other services program; participate in safety planning, temporarily or permanently relocate, or take other actions to increase the safety of the employee or employee's family members; to meet with an attorney or other social services provider to obtain information and advice on, and prepare for or participate in any criminal or civil proceeding; to file a complaint or domestic incident report with law enforcement; to meet with a district attorney's office; to enroll children in a new school; or to

take any other actions necessary to ensure the health or safety of the employee or the employee's family member or to protect those who associate or work with the employee.

173. Under NYLL §196-B, the failure to provide protected sick time is a failure to pay wages that triggers the protections of NYLL § 198. *See Cotton v. Charles T. Sitrin Health Care Center, Inc.*, No. 25 Civ. 71 (DNH) (ML), 2026 WL 225533827, at *5 (N.D.N.Y. Aug. 5, 2026) ("where an employee has alleged that an employer failed to compensate sick leave at the rate required by § 196-b, the employee has alleged a "wage claim" under Article 6, *i.e.*, the underpayment of compensation that an employer is required to pay. That "wage claim" can be pursued under NYLL § 198").

174. Due to Defendant's willful violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their unpaid sick time, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**TENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Time of Hire Wage Notices**
**(Brought on behalf of Plaintiff and the New York Class)**

175. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

176. Defendant failed to supply Plaintiff and the New York Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English and in the language identified as her primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business

as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

177. Due to Defendant's violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendant failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**ELEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the New York Class)**

178. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

179. Defendant failed to supply Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; and net wages.

180. Due to Defendant's violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the FLSA Collective and New York Class, respectfully requests that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notices, to all Drivers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Walmart in New York. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid minimum wages, overtime wages, agreed upon wages, tips, sick leave and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff as representative of the New York Class and counsel of record as Class Counsel;

E. Unpaid minimum wages, overtime wages, agreed upon wages, withheld tips, and unlawfully deducted costs as permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F. Liquidated damages permitted by law pursuant to the NYLL;

G. Statutory penalties of fifty dollars for each workday that Defendant failed to provide Plaintiff and the New York Class with proper time of hire wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H. Statutory penalties of two hundred fifty dollars for each workday that Defendant

failed to provide Plaintiff and the New York Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

I. Prejudgment and post-judgment interest;

J. Reasonable attorneys' fees and costs of the action; and

K. Such other relief as this Court shall deem just and proper.

Dated: September 30, 2026
New York, New York

Respectfully submitted,

/s Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Putative Collective*

FAIR LABOR STANDARDS ACT CONSENT

1. I consent to be a party plaintiff in the lawsuit against Walmart related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Faith vandemark (Jul 13, 2026 11:16:47 EDT)

Signature

Faith Vandemark

Full Legal Name (Print)

8452328863

Telephone Number

[redacted]